JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of Judge Janet Burnside that denied John Woods' Crim.R. 32.1 motion to withdraw his 1991 guilty plea to one count of aggravated murder with a capital, felony-murder specification. We affirm.
 {¶ 2} During the evening of June 20, 1990, Woods and Redintoe "Curt" Thompson, Gary Hill, and Eugene Woodard decided to do some "gaffling," which involves pulling people out of their cars to rob them and/or steal the cars. Woods and his companions, in a car he had stolen earlier in the day, drove from East 71st Street in Cleveland eastbound on Harvard Avenue. Woods noticed an Oldsmobile with customized wheels and pulled along side. Woodard, brandishing a .45 caliber handgun, ordered the driver out of the car. The would-be victim drove away, and Woodard, shooting at the Oldsmobile, hit it once in the trunk.
 {¶ 3} The four men abandoned their car, stole another from a Harvard Avenue parking lot and, with Woods driving, continued their search for suitable victims. They spotted Mani Akram driving an Oldsmobile Ninety Eight with custom wheels. Woods pulled in front of Akram's car and applied his brakes, causing the two vehicles to collide. After Thompson and Woodard got out of their car, Woodard opened Akram's driver's side door and shot him in the chest; then Thompson pulled Akram out of the car. Leaving Akram to die, they drove off in the Oldsmobile. The men, in both cars, met up later. The four doused the cars with gasoline and set them on fire to destroy any evidence linking them to the shootings.
 {¶ 4} Woods was indicted on two counts of aggravated murder, each with capital felony-murder specifications and gun specifications; one count of aggravated robbery, with a gun specification; one count of receiving stolen property; and, two counts of arson. The State agreed to allow Woods to plead guilty to one count of aggravated murder with the capital specification, and to nolle all other counts in the indictment and all gun specifications. The State also stipulated that the statutory aggravating factors surrounding the aggravated murder count did not outweigh the mitigating factors,[1] and agreed to allow Woods to receive a sentence of life imprisonment with a possibility of parole after twenty years of actual incarceration, the minimum sentence which could be imposed for that crime.
 {¶ 5} In a lengthy, detailed plea hearing, the judge confirmed the details of this plea agreement and questioned Woods to ensure that he was aware of the constitutional rights he was waiving by entering the plea, in full compliance with Crim.R. 11(C)(2).[2] The parties and the judge agreed that it was not necessary to convene a three-judge panel to take the plea or determine the appropriate sentence, as provided by R.C. 2945.06
and Crim.R. 11(C)(3), and the judge accepted the plea and later imposed the agreed-upon sentence.
 {¶ 6} Although Woods took no direct appeal from his 1991 conviction, he filed a motion in this court for leave to file a delayed appeal in 1997, which we denied. In August of 1998, Woods moved to withdraw his guilty plea under Crim.R. 32.1. In November, 2002, the judge denied the motion without a hearing, finding that he had not established that the way his plea was taken resulted in a manifest injustice.
I. JURISDICTION UNDER R.C. 2945.06
 {¶ 7} Woods contends that his plea was void as a matter of law because the judge lacked subject matter jurisdiction.
 {¶ 8} R.C. 2945.06 provides: "In any case in which a defendantwaives his right to trial by jury and elects to be tried by the courtunder section 2945.05 of the Revised Code, any judge of the court inwhich the cause is pending shall proceed to hear, try, and determine thecause in accordance with the rules and in like manner as if the causewere being tried before a jury. If the accused is charged with anoffense punishable with death, he shall be tried by a court to becomposed of three judges."
 {¶ 9} Crim.R. 11(C)(3) provides: "If the indictment contains oneor more specifications that are not dismissed upon acceptance of a pleaof guilty or no contest to the charge, or if pleas of guilty or nocontest to both the charge and one or more specifications are accepted, acourt composed of three judges shall: (a) determine whether the offensewas aggravated murder or a lesser offense; and (b) if the offense isdetermined to have been a lesser offense, impose sentence accordingly; or(c) if the offense is determined to have been aggravated murder, proceedas provided by law to determine the presence or absence of the specifiedaggravating circumstances and of mitigating circumstances, and imposesentence accordingly."
 {¶ 10} In State v. Parker,[3] where the defendant pleaded guilty to aggravated murder with capital specifications in exchange for an agreed-upon sentence, and a single judge took his plea, the Ohio Supreme Court held, "The three-judge-panel requirement of R.C. 2945.06 is a jurisdictional matter that cannot be waived. * * * Since there was no amendment to the indictment deleting the death-penalty specification, it was required that [the defendant's] case be heard by a three-judge panel."[4] However, the court did not clarify what type of jurisdictional matter taking a plea in such circumstances constituted. The Ohio Supreme Court has held that defects in the subject matter jurisdiction of a court are not waivable and can be raised at any time.[5] Additionally, defects in statutory procedural requirements set forth in R.C. 2945.06 constitute grounds for vacation of pleas in death-penalty cases because the statute applies special procedural safeguards in such cases,[6] and strict compliance with the statute is necessary.[7] In death penalty cases, however, challenge of convictions for defects in the statutory jury waiver and plea acceptance procedures outlined by statute may only be had upon direct appeal.[8]
 {¶ 11} In Collier v. Gansheimer,[9] the Eleventh Appellate District persuasively reasoned: "Although courts have ruled that thefailure to abide by R.C. 2945.06 * * * [is a] `jurisdictional' defect,there are different types of jurisdiction: personal jurisdiction, subjectmatter jurisdiction, territorial jurisdiction and jurisdiction of theparticular case. Subject matter jurisdiction defines the power of thecourt over classes of cases it may or may not hear. The power to declarea judgment void for lack of subject matter jurisdiction is a function ofwhether or not the subject case fails within the class of cases overwhich the court has subject matter jurisdiction. Pursuant to R.C. 2931.03,the court of common pleas has subject matter jurisdiction of criminalcases. Thus, the trial judge had subject matter jurisdiction overaggravated murder cases.
* * * But unlike subject matter jurisdiction, defects in jurisdictionof the particular case render the judgment merely voidable, notvoid."[10]
 {¶ 12} As the Ohio Supreme Court ruled in State v. Filiaggi,[11]
 "Where it is apparent from the allegations that the matter alleged iswithin the class of cases in which a particular court has been empoweredto act, jurisdiction is present. Any subsequent error in the proceedingsis only error in the `exercise of jurisdiction,' as distinguished fromthe want of jurisdiction in the first instance. * * *
 `In cases where the court has undoubted jurisdiction of the subjectmatter, and of the parties, the action of the trial court, thoughinvolving an erroneous exercise of jurisdiction, which might be takenadvantage of by direct appeal, or by direct attack, yet the judgment ordecree is not void though it might be set aside for the irregular orerroneous exercise of jurisdiction if appealed from. It may not be calledinto question collaterally.'"[12]
 {¶ 13} Accordingly, to reconcile the State v. Parker pronouncement that "the three-judge-panel requirement of R.C. 2945.06 is a jurisdictional matter that cannot be waived," yet adhere to precedent holding that such jurisdiction does not mean subject matter jurisdiction
and may not be attacked except upon direct appeal, we hold that State v.Parker must be interpreted to mean that a defendant need not raise error relative to compliance with R.C. 2945.06 at the trial level before raising it upon direct appeal. In a Crim.R. 32.1 motion context, reversal is not automatic upon a showing of a violation and, in order to sustain such a motion based on a failure to adhere to R.C. 2945.06 at the plea stage of proceedings, a judge must find that the error resulted in a manifest injustice.
 {¶ 14} Crim.R. 32.1 provides:
"A motion to withdraw a plea of guilty or no contest may be made onlybefore sentence is imposed; but to correct manifest injustice the courtafter sentence may set aside the judgment of conviction and permit thedefendant to withdraw his or her plea." This rule imposes a strictstandard for deciding a post-sentence motion to withdraw a plea.[13] Adefendant may only be allowed to withdraw a plea after sentencing in"extraordinary cases."[14] The defendant bears the burden of showing amanifest injustice warranting the withdrawal of a plea.[15] "The logicbehind this precept is to discourage a defendant from pleading guilty totest the weight of potential reprisal, and later withdrawing the plea ifthe sentence was unexpectedly severe."[16]
 {¶ 15} We may not disturb a judge's decision whether to grant a motion to withdraw a plea absent an abuse of discretion. "However, when applying an abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court but must be guided by a presumption that the findings of the trial court are correct."[17]
 {¶ 16} A manifest injustice is defined as a "clear or openly unjust act."[18] Another court has referred to it as "an extraordinary and fundamental flaw in the plea proceeding."[19] Again, "manifest injustice" comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her.[20]
 {¶ 17} In this case, Woods faced two capital murder counts, two counts of arson, one count of aggravated robbery, one count of receiving stolen property, and gun specifications that would have added a mandatory three-year prison term to any term eventually imposed, if not death. In exchange for his plea, which included an explicit agreement of the agreed sentence of life imprisonment with the possibility of parole after twenty years actual incarceration, he avoided the possible sentence of death and the possible prison terms associated with five other felony charges and a mandatory gun specification prison sentence.
 {¶ 18} While Woods argues that, had a three-judge panel evaluated the facts of the case and found him guilty of an offense lesser than aggravated murder, it may have sentenced him to a shorter prison term than that imposed, his argument ignores the fact that the term imposed was a part of his plea bargain. Put another way, without explicit agreement to a twenty year-to-life prison sentence, it is pure conjecture that the State would have extended the plea offer at all. We cannot say in hindsight that the bargain Woods negotiated prior to trial was a bad one, in view of the fact that, the procedural violation of Crim.R. 11(C)(3) and R.C. 2945.06 notwithstanding, the plea hearing was perfect in terms of notifying Woods of the constitutional rights he was giving up in pleading guilty, and he unambiguously indicated the voluntary, intelligent and knowing nature of his plea. No error has been assigned relative to this aspect of the proceedings. Hence, this case does not come within the "extraordinary" category of cases for which vacating a guilty plea is made necessary by manifest injustice in the results of the plea.
 {¶ 19} Additionally, as the above case law demonstrates, the proper way to challenge a plea predicated on an error under R.C. 2945.06, without factual considerations of prejudice to a defendant, is a direct appeal. Woods has or had an adequate remedy at law to rectify any asserted error on those grounds.
 {¶ 20} Finally, Woods asserts that, since he protested his innocence to the actual killing of Akram, or somehow conveyed to the judge that he was not aware that "gaffling" entailed possible murders, as opposed to mere aggravated robberies, upholding his plea constitutes manifest injustice. Specifically, at the plea hearing on March 19, 1991, Woods unequivocally, without comment, stated that he was pleading guilty to aggravated murder and the capital felony-murder specification attached to it. At sentencing, however, in exercising his right to elocution, Woods stated: "I'm sorry he, that the boy got killed, but that ain't me killing nobody. I ain't with that. That just ain't me. I ain't go down with that [sic]."[21]
 {¶ 21} "[There is] no constitutional bar to accepting a guilty plea in the face of an assertion of innocence provided a defendant voluntarily, knowingly and understandingly consents to sentencing on a charge."[22]
 {¶ 22} As we held above, notwithstanding any protestations of innocence Woods may have arguably made at sentencing, his plea hearing conclusively demonstrated the known effect of the plea, Woods' understanding of it and the voluntary, knowing and intelligent entry of it. Woods demonstrated no manifest injustice, the judge committed no abuse of discretion and this assignment of error is not well taken.
II. INEFFECTIVE ASSISTANCE OF COUNSEL
 {¶ 23} Woods argues that his lawyer was deficient in not advising him of his right to have his plea taken by a three-judge panel. Under the doctrine of res judicata,
"* * * [A] final judgment of conviction bars a convicted defendant whowas represented by counsel from raising and litigating in any proceedingexcept an appeal from that judgment, any defense or any claimed lack ofdue process that was raised or could have been raised by the defendant atthe trial, which resulted in that judgment of conviction, or on an appealfrom that judgment."[23]
 {¶ 24} Where a defendant fails to directly appeal a conviction, a claim of ineffective assistance of trial counsel in a Crim.R. 32.1 motion to withdraw a guilty plea is barred by the doctrine of res judicata.[24]
Here, that exact fact scenario presents itself. This appeal from the denial of Woods' Crim.R. 32.1 motion is his first attempt to assert any ineffective assistance of counsel claim relative to the representation he received in trial court proceedings. As such, we cannot evaluate this claim, and this assignment of error is not well taken.
III. HEARING ON A CRIM.R. 32.1 MOTION
 {¶ 25} Woods submits it was error to deny his Crim.R. 32.1 motion without conducting a hearing. "A trial court is not required to hold a hearing on the motion to withdraw a plea of guilt if the facts alleged by the defendant, and accepted as true by the court, would not require that the guilty plea be withdrawn."[25] Having no basis on which to even grant Woods' motion under Crim.R. 32.1, the judge did not err in denying it without a hearing. This assignment of error has no merit.
Affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, J., concurs.
ANN DYKE, J., concurs in judgment only.
[1] A judge can impose a jury's recommendation of death as a sentence for aggravated murder, or three judges, sitting without a jury, may determine that such sentence is appropriate, only if the judge or the three-judge panel finds that the aggravating factors outweigh the mitigating factors beyond a reasonable doubt. See R.C. 2929.03(D)(3). R.C. 2929.04 lists the aggravating and mitigating factors that may be considered.
[2] At the same hearing, Woods pleaded guilty to the theft of another automobile committed after the Akram killing, but no error has been assigned to that part of the proceedings.
[3] (2002), 95 Ohio St.3d 524, 2002-Ohio-2833.
[4] Id. at 527.
[5] State v. Wilson 73 Ohio St.3d 40, 1995-Ohio-217, paragraph two of the syllabus, (holding that the exclusive subject matter jurisdiction of juvenile courts cannot be waived).
[6] State v. Green, 81 Ohio St.3d 100, 103, 1998-Ohio-454.
[7] State v. Pless, 74 Ohio St.3d 333, paragraph one of the syllabus.
[8] Id., at paragraph two of the syllabus (dealing with an ineffective jury waiver under R.C. 2929.05), emphasis added.
[9] (March 8, 2002), Ashtabula App. No. 2001-A-0087, 2002-Ohio-1054.
[10] Id.
[11] 86 Ohio St.3d 230, 1999-Ohio-99.
[12] Id. at 240, internal cites omitted, emphasis in original.
[13] State v. Griffin (2001), 141 Ohio App.3d 551, 553, citing Statev. Xie (1992), 62 Ohio St.3d 521, 526.
[14] State v. Smith (1977), 49 Ohio St.2d 261, 264.
[15] Id. at paragraph 1 of the syllabus.
[16] State v. Wynn (1998), 131 Ohio App.3d 725, 728, citing State v.Caraballo (1985), 17 Ohio St.3d 66.
[17] Focke v. Focke (1992), 83 Ohio App.3d 552.
[18] State ex rel. Schneider v. Kreiner (1998), 83 Ohio St.3d 203.
[19] State v. Lintner, Carroll App. No. 732, 2001-Ohio-3360.
[20] State v. Wheeler, Montgomery App. No. 18717, 2002-Ohio-284.
[21] See sentencing transcript, p. 42.
[22] State v. Post (1987), 32 Ohio St.3d 380, 387, citing NorthCarolina v.. Alford (1970), 400 U.S. 25, 37-38.
[23] State v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus.
[24] State v. Kavlich (June 15, 2000), Cuyahoga App. No. 77217, citing State v. Jackson (May 2, 1996), Cuyahoga App. No. 69501.
[25] State v. Nathan (1995), 99 Ohio App.3d 722; State v. Blatnik
(1984), 17 Ohio App.3d 201.